# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KAREN RAWERS,

       Plaintiff,

vs.                                      No. CIV 19-0034 JB\CG

UNITED STATES OF AMERICA and
CLARISSA SKINNER-RAMP

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion in Limine to Limit Testimony Regarding Whether Rawers' Medical Expenses Were Reasonable and Necessary; Limiting the Testimony of Treating Physicians to the Care They Rendered, filed August 26, 2020 (Doc. 56)("U.S. MIL"). The Court held a hearing on September 4, 2020. See Clerk's Minutes at 1, filed September 4, 2020 (Doc. 91). The issues are whether: (i) the Court should limit Plaintiff Karen Rawers' non-retained experts -- treating physicians -- to testifying whether the medical care they have personally provided following Rawers' accident is "reasonable" and "necessary"; (ii) the Court should prohibit Rawers' retained experts from testifying about whether Rawers' medical care is "reasonable" and "necessary"; and (iii) the Court should permit the Defendant United States of America's Independent Medical Examination Panel ("IME Panel") to testify about whether Rawers' medical care is "reasonable" and "necessary." See U.S. MIL at 1. The Court concludes that: (i) Rawers' non-retained experts -- treating physicians -- may testify whether the care they have provided is reasonable and necessary; (ii) Rawers' retained experts may testify about whether the care discussed in their expert reports was reasonable and necessary; and (iii) the IME Panel may testify about whether Rawers' past and future medical care is reasonable and necessary. The

Court therefore grants in part and denies in part the U.S. MIL.

## FACTUAL BACKGROUND

On August 7, 2020, the Court issued a Memorandum Opinion and Order that stated the

undisputed relevant facts as follows:

> On April 5, 2016, Rawers' car collided with a vehicle that a United States
> Postal Service employee was operating.  See United States' Motion for Summary
> Judgment and Memorandum in Support ¶ 1, at 2, filed May 18, 2020 (Doc. 56)("U.S.
> MSJ")(asserting this fact)(citing Complaint (Jury Trial Demanded) ¶¶ 3, 6-12, at 1,
> 3-4, filed January 15, 2020 (Doc. 1)("Complaint")); Reply to Response to Motion
> for Summary Judgment filed by Karen Rawers, ¶ 1, at 5, filed June 12, 2020
> ("Rawers Response")(admitting this fact).

> At the time of the crash, Rawers was driving eastbound along Hoagland
> Road, in Las Cruces, New Mexico, heading to her home on Carlyle Drive, which
> is the next street after Chateau Drive.  See Plaintiff's Motion for Partial Summary
> Judgement, filed May 18, 2020 ¶ 2, at 2 (Doc. 57)("Rawers MSJ")(asserting this
> fact)(citing Affidavit of Thaddeus Allen at 1 (undated), filed May 18, 2020
> (Doc. 57-1)("Allen Aff.")); Deposition of Karen Rawers at 23:19-24:4 (taken
> February 27, 2020), filed May 18, 2020 (Doc. 57-2)("Rawers Depo."); Defendant's
> Response in Opposition to Rawers' Motion for Partial Summary Judgment at 1,
> filed June 9, 2020 (Doc. 63)(stating that this fact is undisputed).

> The accident occurred on Tuesday, April 5, 2016, between 4:30 p.m. and
> 4:50 p.m.  See Rawers MSJ ¶ 1, at 1 (asserting that the collision occurred around
> 4:50 p.m. but dispatch was notified at 4:36 p.m.)(citing Allen Report).  Rawers had
> the right of way as she drove east on Hoagland Road going through the intersection
> with Chateau Drive.  See Rawers MSJ ¶ 4, at 2 (asserting this fact)(citing Allen
> Aff.; Allen Report).  Skinner-Ramp was driving a United States Postal Service
> vehicle northbound on Chateau Drive towards its intersection with Hoagland Road
> and approached the stop sign that is on Chateau Drive, right before Chateau Drive
> intersects Hoagland Road.  See Rawers MSJ ¶ 3, at 2 (asserting this fact)(citing
> Allen Aff.; Allen Report).

> Skinner-Ramp's vehicle sustained damage to its front left side, while the
> front of Rawers' vehicle was damaged in the crash.  See Rawers MSJ ¶ 5, at 2
> (asserting that "Ms. Skinner-ramp failed to yield to oncoming traffic and proceeded
> to drive through the intersection and pulled out into the path of Rawers' vehicle,
> causing the side of Defendant Skinner-Ramp's USPS delivery vehicle to collide
> with the front of Rawers' vehicle")(citing Allen Aff. ¶ 6, at 1; Allen Report at 1).

Rawers, through her former counsel, filed a Claim for Damage, Injury or Death, Standard Form with the U.S. Postal Service on December 18, 2017, seeking $953,179.75 in damages arising from the accident.  See U.S. MSJ ¶ 1, at 2 (asserting this fact)(citing Declaration of Stanford M. Bjurstrom (executed May 14, 2020), filed May 18, 2020 (Doc. 56-1)("Bjurstrom Decl."); Letter from Dania Gardea to Cynthia Wood (dated December 20, 2017), filed May 18, 2020 (Doc. 56-3)("Gardea Letter"); Claim for Damage, Injury, or Death (undated), filed May 18, 2020 (Doc. 56-2)("Rawers SF-95")); Rawers Response ¶ 7, at 6 (citing Gardea Letter at 12).  The Gardea Letter states: "On behalf of my client, Ms. Karen Rawers, and based on the above information, we hereby demand $953,179.95 in full settlement of all claims."  Rawers Response ¶ 7, at 6 (asserting this fact)(citing Gardea Letter at 12); Defendants' Reply in Support of Motion for Summary Judgment ¶ 7, at 1, filed June 13, 2020 (Doc. 65)("U.S. Reply")(stating that the fact is admitted).

On March 14, 2018, Lilley & O'Connell sent a letter to the National Tort Center indicating that Lilley & O'Connell represents Ms. Rawers and that the Gardea Law Firm no longer represented Ms. Rawers. See Rawers MSJ ¶ 8, at 6 (asserting this fact)(citing Letter from Jerome O'Connell to Kyle Harbaugh (dated March 14, 2018), filed June 1, 2020 (Doc. 61-8)("March 14 Letter")).  The letter states in part: "Please be advised the Lilley & O'Connell, P.A. are now representing Karen Rawers in the personal claim for damages."  Rawers MSJ ¶ 8, at 6 (asserting this fact)(citing March 14 Letter at 1).  The National Tort Center neither responded to nor acknowledged receipt of Rawers' March 14 Letter.  See Rawers Response ¶ 9, at 6 (asserting this fact)(citing Declaration of Jerome O'Connell, Esq. ¶ 10, at 2, filed June 1, 2020 (Doc. 61-1)("O'Connell Decl.")).

The National Tort Center sent a letter to Rawers' former counsel on March 23, 2018.  See Rawers Response ¶ 10, at 6 (asserting this fact).  Lilley & O'Connell responded on April 3, 2018, by again advising the Postal Service that Rawers had retained new counsel.  See Rawers Response ¶ 10, at 6 (asserting this fact)(citing Letter from Kathy Vinyard to Tyler Reder (dated April 3, 2018), filed June 1, 2020 (Doc. 61-10)("April 3 Letter")).  The April 3 Letter states in part: "Enclosed is a copy of the letter sent to Mr. Harbaugh on March 14, 2018, advising that Lilley & O'Connell, P.A. are now representing Karen Rawers in the personal claim for damages."  Rawers Response ¶ 10, at 6 (asserting this fact)(citing April 3 Letter at 1).  The National Tort Center neither responded to nor acknowledged receipt of the April 3 Letter.  See Rawers Response ¶ 11, at 7 (asserting this fact)(citing O'Connell Decl. ¶ 13, at 2).

On June 15, 2018, Lilley & O'Connell sent a letter to the National Tort Center providing references to New Mexico Jury Instructions and providing additional medical information regarding Rawers' damages, including electronic medical records.  See Rawers Response ¶ 12 (asserting this fact)(citing Letter from

Jerome O'Connell to Tyler Reder (dated June 15, 2018), filed June 1, 2020 (Doc. 61-11)("June 15 Letter")).  The June 15 Letter's purpose was an attempt to resolve Rawers' Claim.  See Rawers Response ¶ 12, at 7 (asserting this fact)(citing O'Connell Decl. ¶ 14, at 2).  The National Tort Center neither responded to nor acknowledged receipt of the June 15 Letter.  See Rawers Response ¶ 13, at 7 (asserting this fact)(citing O'Connell Decl. ¶ 15, at 2).

On September 28, 2018, Lilley & O'Connell sent a letter ("September 28 Letter") to the National Tort Center beginning: "This letter is a follow-up to the December 20, 2017 tort claims notice and settlement demand submitted on behalf of Ms. Rawers in $953,179.95."  Rawers Response ¶ 14, at 7 (asserting this fact)(citing Letter from Jerome O'Connell to Tyler Reder (dated September 28, 2018), filed May 18, 2020 (Doc. 56-5)("Sept. 28 Letter")).  See U.S. Reply ¶ 14, at 2 (stating that it admits the Sept. 28 Letter's quotations); U.S. MSJ ¶ 1, at 2 (asserting this fact)(citing Bjurstrom Decl. ¶ 5, at 2).  In the Sept. 28 letter, Rawers' counsel wrote that she had undergone additional medical procedure that the automobile collision caused.  See U.S. MSJ ¶ 3, at 2 (asserting this fact)(citing Bjurstrom Decl. ¶ 5, at 2); Letter from Jerome O'Connell to Tyler Reder at 1 (dated September 28, 2018), filed May 18, 2020 (Doc. 56-5)("Sept. 28 Letter); Rawers Response ¶ 3, at 5 (admitting that the Sept. 28 Letter provided additional information concerning her damages).  In the Sept. 28 Letter, Rawers' counsel "revoked" the SF-95 claim amount of $953,179.75 and demanded $3,500,000.00 in compensation to resolve the claim.  See U.S. MSJ ¶ 4, at 2 (asserting this fact)(citing Bjurstrom Decl. ¶ 5, at 2; Sept. 28 Letter at 2-3).  The National Tort Center neither responded to nor acknowledged receipt of the Sept. 28 Letter. See Rawers Response ¶ 15, at 7 (asserting this fact)(citing O'Connell Decl. ¶ 17, at 2); Amended Declaration ¶ 12, at 2.

On January 15, 2019, Rawers filed her Complaint, asserting a claim for damages against the United States arising from the April 5, 2016, motor vehicle accident.  See U.S. MSJ ¶ 5, at 2 (asserting this fact)(citing Complaint ¶¶ 3, 46, at 1, 8).  Before Rawers filed the lawsuit, the United States did not contact Rawers regarding her claim, and it did not respond to any of her letters.  See Rawers Response ¶ 16, at 7-8 (asserting this fact)(citing June 15 Letter at 1; Sept. 28 Letter at 1; O'Connell Decl. ¶¶ 10, 13, 15, 17, at 2).  Lilley & O'Connell is the only counsel of record for Rawers; the Gardea Law Firm, P.C., has neither appeared not participated in this litigation, and it has not had any involvement in the claim process since March, 2018.  See Rawers Response ¶ 17, at 8 (asserting this fact)(citing O'Connell Decl. ¶ 8, at 1).

The Postal Service denied Rawers' SF-95 tort claim via letter dated March 20, 2019.  See U.S. MSJ ¶ 6, at 3 (asserting this fact)(citing Bjurstrom Decl. ¶ 7, at 2; Letter from Stanford Bjurstrom to Dania Gardea (dated March 20, 2019), filed May 18, 2020 (Doc. 56-6)); Rawers Response ¶ 5, at 5-6 (admitting this fact).  The

United States sent this letter to the Gardea Law Firm, which stated that Rawers' claim was denied and specifically referenced the lawsuit.  See Rawers Response ¶ 18, at 8 (asserting this fact)(citing O'Connell Decl. ¶ 20, at 3); U.S. Reply ¶ 18, at 2 (admitting this fact); Letter from Stanford Bjurstrom to Dania Gardea (dated March 20, 2019), filed June 1, 2020 (Doc. 61-13)("March 20 Letter")("As your client has now filed a civil action in the United States District Court regarding this matter, her administrative claim is hereby denied.").  Neither Rawers nor her attorney received the March 20 Letter from the United States via registered or certified mail.  See Rawers Response ¶ 18, at 8 (asserting this fact)(citing O'Connell Decl. ¶ 20, at 3).

Rawers has received medical treatment for her injuries she suffered from the accident.  See U.S. MSJ ¶ 2, at 2 (asserting this fact)(citing Complaint ¶¶ 4, 15-16, 18, at 2-4); Rawers Response ¶ 1, at 5 (admitting this fact).  Rawers underwent an examination with her retained surgical spine expert, Dr. Paul Saiz, on December 4, 2019, and he subsequently issued his expert report in this matter on December 19, 2019.   See Rawers MSJ ¶ 7, at 2 (asserting this fact)(citing Spine Opinion/Medical Record Review (dated December 19, 2019), filed May 18, 2020 (Doc. 57-3)("Saiz Report")).

Rawers' retained neurostimulator specialist, Dr. Richard Rauck, who reviewed Rawers' medical records, interviewed her by telephone on December 30, 2019, and subsequently issued his expert report on January 13, 2020.  See Rawers MSJ ¶ 8, at 2 (asserting that Dr. Rauck examined Rawers on December 30, 2019)(citing Letter from Richard Rauck to Jerome O'Connell (dated Jan. 13, 2020), filed May 18, 2020 (Doc. 57-4)("Rauck Report")).  Rawers submitted a number of her claimed medical billings in this matter to Joan Schofield, RN, BSN, MBA, for a reasonableness review, and Schofield subsequently issued her expert report on January 14, 2020.  See Rawers MSJ ¶ 9, at 3 (asserting that she submitted all of her medical bills to Schofield)(citing Letter from Joan Schofield to Jerome O'Connell (dated Jan. 14, 2020), filed May 18, 2020 (Doc. 57-5)("Schofield Report")).  An Independent Medical Examination panel produced a report on Rawers' medical condition dated April 6, 2020.  See Panel Independent Medical Examination Report (dated April 6, 2020), filed May 18, 2020 (Doc. 57-6)("IME Report").

The crash caused Rawers' spinal cord stimulator to malfunction, and once the stimulator was properly revised, Rawers reverted to baseline status.  See Rawers MSJ ¶ 20, at 5 (asserting that the IME panelists agree with Dr. Saiz' conclusion on this fact)(citing IME Report at 25); Saiz Report at 12 (asserting this fact).  The crash caused Rawers' asymptomatic cervical degenerative disk disease at C4-5, C5-6, and C6-7 to become permanently symptomatic.   See Rawers MSJ ¶ 21, at 5 (asserting that the IME panelists agree with Dr. Saiz' conclusion on this fact)(citing IME Report at 25); Saiz Report at 12.  The crash did not aggravate Rawers' pre-existing degenerative disk disease at L3-4.  See Rawers MSJ ¶ 22, at 5 (asserting

that the IME panelists agree with Dr. Saiz' conclusion)(citing IME Report at 25-26); Saiz Report at 12.  Rawers has incomplete spinal fusion at C4-5 and C5-6.  <u>See</u> Rawers MSJ ¶ 23, at 5 (asserting that the IME panel agrees with Dr. Saiz' conclusion that there is incomplete fusion at C4-5 and C5-6)(citing IME Report at 25-26); Saiz Report at 13.  The crash resulted in damage to Rawers' spinal cord stimulator, necessitating its replacement and revision, but future replacements of the system would not be related to the April 5, 2016, crash.  <u>See</u> Rawers MSJ ¶ 24, at 6 (asserting that the IME Panel agreed with Dr. Rauck's conclusion that the crash damaged the spinal cord stimulator, necessitating replacement and revision)(citing IME Report at 26); Rauck Report at 8-9.

Rawers is expected to have cervical pain and left upper extremity pain despite future treatment, related to the accident, and she will need future medication and physical therapy to maintain her current level of functioning.  <u>See</u> Rawers MSJ ¶ 25, at 6 (asserting that the IME Panel agrees with this conclusion of Dr. Rauck)(citing IME Report at 26); Rauck Report at 9.  Rawers' submitted bills totaling $469,902.94 to an expert for a reasonableness analysis, but her reasonable expenses totaled $381,781.94.  <u>See</u> Rawers MSJ ¶ 26, at 6 (asserting that Rawers incurred $469,902.94 in medical expenses as a result of the accident and that a reasonableness analysis suggested this amount should be reduced by $88,131)(citing Schofield Report at 1).

<u>Rawers v. United States</u>, No. CIV 19-0034 JB\CG, 2020 WL 4569591, at *1-8 (D.N.M. Aug. 7, 2020) Memorandum Opinion and Order, entered August 7, 2020 (Doc. 83)("MOO").

## **PROCEDURAL BACKGROUND**

Rawers filed her Complaint in Federal Court pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346.  <u>See</u> Complaint ¶ 1, at 1.  Rawers alleges that Skinner-Ramp, a Postal Service mailwoman, negligently crashed into Rawers' car, causing her significant injury.  <u>See</u> Complaint ¶¶ 6-12, at 2-3.  In her Complaint, Rawers names the United States and Clarissa Skinner-Ramp as Defendants.  <u>See</u> Complaint at 1.  The Complaint contains one count: "Negligence Resulting in Personal Injury Damages and Property Damages."  Complaint at 7.  The United States filed a motion to dismiss Rawers' claims against Skinner-Ramp, because Rawers may bring Federal Tort Claims Act claims only against the United States and not against individual employees.  <u>See</u>

Unopposed Motion to Dismiss Claims Against Defendant Clarissa Skinner-Ramp, filed August 21, 2019 (Doc. 28)("Partial MTD").  The Court granted the Partial MTD.  See Order Granting Unopposed Motion to Dismiss Claims Against Defendant Clarissa Skinner-Ramp, filed September 20, 2019 (Doc. 31).

On May 18, 2020, the United States filed a Motion for Summary Judgment.  See Motion for Summary Judgment by the United States (Doc. 56).  In the U.S. MSJ, the United States argued that Rawers filed her complaint prematurely, "divesting this Court of jurisdiction."  U.S. MSJ at 1.  Rawers filed a Motion for Partial Summary Judgment on the same day.  See Motion for Summary Judgment by Karen Rawers (Doc. 57).  Rawers argued that the undisputed material facts demonstrated duty, breach, and causation. Rawers MSJ at 1. She therefore contended that a genuine issue of material fact existed only with respect to damages.  Rawers MSJ at 1.  The Court held a hearing on both motions on June 15, 2020.  See Clerk's Minutes at 1, filed June 15, 2020 (Doc. 69).  On August 7, 2020, the Court issued the MOO.  See MOO.  First, the Court held that it had subject-matter jurisdiction over the case because 28 C.F.R. § 14.2(c) is a claim-processing rule rather than a jurisdictional rule.  See MOO at 83-84.  Second, the Court found that the September 28 Letter does not constitute an amendment under 28 C.F.R. § 14.2(c).  See MOO at 1. Finally, the Court concluded that Rawers established that Skinner-Ramp acted negligently per se. See MOO at 99-101.  Accordingly, the Court denied the United States' Motion for Summary Judgment and granted Rawers' Motion for Partial Summary Judgment.  See MOO at 1.

The Court scheduled a bench trial for September 10-11, 2020.  See Amended Notice of Hearing, entered August 28, 2020 (Doc. 88).  Rawers' trial witness list includes the following expert witnesses: (i) Dr. Paul Saiz; (ii) Dr. Richard Rauck; (iii) Joan Schofield, R.N.; (iv) Dr.

Eduardo Vazquez; (v) Dr. Fernando Ravessoud; (vi) the United States' IME Panel (Dr. Brian M. Shelley, Dr. Michael Malizzo, and Dr. Mark Crawford).  See Witness List by Karen Rawers, filed July 24, 2020 (Doc. 78)("Rawers Witness List").  Rawers designates Dr. Saiz, Dr. Rauck, and Joan Schofield as retained expert witnesses in her Disclosure of Expert Trial Witnesses at 1-3 (Doc. 87-1)("Expert Disclosure").  She listed Dr. Vasquez and Dr. Ravessoud as non-retained expert witnesses.  See Expert Disclosure at 3-4.

### 1.   **The U.S. MIL**.

Following the Court's MOO, the United States filed a Motion in Limine to exclude evidence at trial.  See U.S. MIL at 1.  The United States argues that Rawers' witnesses should not be able to testify whether Rawers' medical expenses were "necessary."  See U.S. MIL at 1 (quoting UJI 13-804 NMRA).  The United States advances three proposed limitations on Rawers' expert testimony.  See U.S. MIL at 1.

First United States contends that two of Rawers' witnesses -- her treating physicians -- may testify only regarding treatment they personally rendered because they are non-retained experts for whom Rawers did not provide expert reports.  See U.S. MIL at 1.  Further, the United States argues that the Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure disclosures for these witnesses fail to divulge  Rawers' intention to elicit testimony regarding the necessity of Rawers' treatment by "other" medical providers.  See U.S. MIL at 2; Fed. R. Civ. P. 26(a)(2)(C).

Second, the United States argues that Rawers' retained experts may not testify whether Rawers' medical expenses were necessary.  See U.S. MIL at 4.  The United States alleges that Rawers' retained experts "ha[ve] not disclosed an opinion regarding whether Rawers' alleged expenses were necessary."  U.S. MIL at 4.  It therefore argues that Rawers' retained experts should

not be able to provide an opinion at trial on whether Rawers' expenses were necessary.  U.S. MIL at 4.

Finally, the United States contends that the Court should not allow Rawers to elicit testimony on the necessity of Rawers' medical expenses from the United States' IME Panel.  See U.S. MIL at 4-5.  It argues that Rawers' reliance on statements in the IME panel is misplaced.  See U.S. MIL at 4.  Additionally, the United States asserts that Rawers' failure to disclose the IME panel in her expert disclosures is a violation of rule 26(a)(2)(A).  See U.S. MIL at 5; Fed. R. Civ. P. 26(a)(2)(A).  It contends that Rawers "identifie[d] all expert witnesses retained by Defendant," but did not directly name Dr. Shelly, Dr. Malizzo, or Dr. Crawford -- the IME panel members. See Expert Disclosure at 3; (Doc. 43).  The United States argues that Rawers' failure to amend her expert disclosure to include the IME panelists by name "is not harmless[.]" U.S. MIL at 3. Accordingly, it alleges that allowing Rawers to call the IME panelists as witnesses would unfairly prejudice the United States.  See U.S. MIL at 3.

> **2.** **Rawers' Response to the U.S. MIL.**

Rawers, in her response to the U.S. MIL, contends that the United States has misconstrued Rule 703 of the Federal Rules of Evidence by attempting to limit her witnesses' testimony on the reasonableness and necessity of her medical care.  See Response to Defendant's Motion in Limine, filed September 3, 2020 (Doc. 90)("MIL Response").  See also Fed. R. Evid. 703.  She also argues that rule 703 permits her expert witnesses to rely upon the United States' IME panel's statements. See MIL Response at 1.  Rawers notes that the IME report relies upon her own medical experts' opinions.  MIL Response at 3.

Moreover, she maintains that documents which she filed throughout the case provide the United States with sufficient notice of her witnesses' testimony regarding the reasonableness and necessity of her medical expenses.   See MIL Response at 3.   Rawers contends that these documents' discussion of "all the medical care that Plaintiff received and will receive as a result of the accident" adequately place the United States "on notice of such forthcoming 'reasonable and necessary' testimony."   MIL Response at 3.   Rawers also cites her initial disclosures, which state that Rawers "will likely call . . . [a] reasonable and necessary medical billing expert."   MIL Response at 7 (citing the Plaintiff's Initial Disclosures, July 29, 2019 (Doc. 20-1)).

Additionally, Rawers asserts that she should be able to call the IME panelists at trial, because the IME Report includes "conclusions that the treatment and cost [of medical care] were both reasonable and necessary."   MIL Response at 5.   Rawers also notes that, because she has subpoenaed the United States' "primary" expert witness, Dr. Shelley, he must testify at trial.   MIL Response at 5.   Finally, she notes that the IME Report states that "care for the conditions listed above was reasonable and necessary, and related to the 4/5/16 motor collision."   MIL Response at 7 (citing Rawers Witness List).

With respect to Dr. Saiz' testimony, Rawers argues that her expert disclosures clearly placed the United States on notice that Dr. Saiz would testify whether Rawers' medical expenses are reasonable and necessary.   Plaintiff's Expert Disclosures, filed January 15, 2020 (Doc. 43)("Expert Disclosures"); MIL Response at 6-8.   She notes that the United States failed to take Dr. Saiz' deposition, yet now objects to portions of his proposed testimony at trial.   MIL Response at 6.   Rawers notes that her expert disclosure states that Dr. Saiz will testify "how the accident ***caused*** . . . permanent damage . . . and ***caused the medical care that plaintiff subsequently was***

- 10 -

_**required to undergo in order to treat her injuries**_ . . . [as well as] _**future medical care Plaintiff**_

_**will require**_[.]"  MIL Response at 10 (emphasis in the original).  Accordingly, Rawers argued that

allowing testimony on the reasonableness and necessity of her medical expenses from her retained

experts, her non-retained experts, and the IME Panel will not prejudice the United States.  See

MIL Response at 10-11

    **3.**    **The Hearing.**

The Court held a hearing on the U.S. MIL on September 4, 2020.  Clerk's Minutes at 1,

filed September 4, 2020 (Doc. 91).  The United States asked the Court "to limit testimony with

respect to . . . whether or not Plaintiff's medical expenses were necessary" to two witnesses -- Dr.

Ravessoud and Dr. Vazquez.[1]  See Transcript of Hearing at 2:24-3:12, taken September 4, 2020

(Cunniff)("Tr.").[2] The United States defines "necessary" as "linked to the motor vehicle accident

at issue."  Tr. at 3:10-12 (Cunniff).

The United States noted that Dr. Saiz' expert report did not directly address whether

Rawers' medical treatments were linked to the motor vehicle accident.  See Tr. at 4:8-14 (Cunniff).

Rather, the United States argued that the report was "an ad nauseam enumeration of virtually every

treatment event that the Plaintiff had over the better part of a decade," without indicating which

treatment events are linked to the accident.  See Tr. at 4:22-5:6 (Cunniff).  The United States

further argued that because of Rawers' pre-existing conditions, it was unclear which treatments

were linked to the accident.  See Tr. at 5:6-24 (Cunniff).  Without such "clarity," the United States

---

[1]These are Rawers' treating physicians, serving as her non-retained experts.

[2]The Court's citations to the transcripts of each hearing in this Memorandum Opinion and Order refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

argued it was unable to "get a sense to defend what's necessary and what isn't, and we simply have not been put on notice in that regard." Tr. at 5:25-6:3 (Cunniff).

Next, the United States discussed Rawers' intention to rely on IME panelists with respect to whether her medical expenses were reasonable and necessary. Tr. at 6:4-9 (Cunniff). The United States argues that Rawers' use of IME panelists violates Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure "which requires parties to disclose to the other party identity of any witness it may use at trial to present evidence." Tr. at 7:2-5 (Cunniff). See Fed. R. Civ. P. 26(a)(2)(A). Under rule 26(a)(2)(E), the United States argues that Rawers should have supplemented her disclosure by identifying experts by name. See Tr. at 7:8-9 (Cunniff). The United States asked the Court to limit, accordingly, the presentation of evidence on this topic to "just those witnesses that were clearly disclosed in the pretrial order . . . witness list . . . treating physicians Doctors Ravessoud and Vazquez." Tr. at 9:7-13 (Cunniff).

Rawers replied that experts are permitted to rely "on opinions of other experts if they do so ordinarily in their duties" under rule 703. Tr. at 10:22-25 (O'Connell). See Fed. R. Evid. 703. Rawers further argued that she made the necessary disclosures to admit her proposed expert witnesses' relevant testimony. See Tr. at 12:17-25 (O'Connell). Rawers argued that there is no prejudice to the United States in allowing this testimony regarding "the necessity of the billing and care when their own experts have opined from the beginning that" her treatment is necessary. See Tr. at 14:2-6 (O'Connell). Finally, Rawers conceded that with respect to "treating providers there is no dispute they can't offer new expert opinions on the case." Tr. at 18:1-4 (O'Connell). See also id. at 17:2-4 (O'Connell).

Rawers also cited one of the Court's opinions, <u>Peshlakai v. Ruiz</u>, No. CIV 13-0752 JB/ACT, 2013 WL 6503629 (D.N.M. Dec. 7, 2013)(Browning, J.), which details the "factors the Tenth Circuit looks at" to determine whether deficiencies in expert disclosures prejudice the opposing party.[3] Tr. at 13:21-14:2 (O'Connell).  Rawers argued that any deficiencies in her expert disclosures have not prejudiced the United States regarding "talking about the reasonableness and the necessity of the billing and the care when their own experts have opined from the beginning that it was."  Tr. at 13:21-14:2 (O'Connell).

The United States responded that, under rule 26(a)(2)(A), "a party must identify by name any witness upon whom he is going to rely for evidence."  Tr. at 19:13-17 (Cunniff).  The United States also alleged "inconsistencies" between Rawers' earlier pretrial disclosures and her more recent disclosures.  Tr. at 19:22-25 (Cunniff).  Nevertheless, the United States acknowledged that "there is a lot of leeway with respect to those requirements under 26(a)(2)(b)."  Tr. at 23:17-22 (Cunniff).  The United States argued that it was concerned because "there are so many different treatment events . . . that it's difficult for us to forecast without a disclosure in the expert materials which of these events are necessary."  Tr. at 23:25-24:5 (Cunniff).

## LAW REGARDING EXPERT TESTIMONY

"Since the Supreme Court of the United States decided <u>Daubert</u> . . ., trial courts have had the responsibility to make certain that proffered experts will assist the jury in understanding the

---

[3]The Court explains that the Tenth Circuit has detailed four factors that district courts should consider when determining whether to exclude expert evidence: "(i) the prejudice or surprise to the party against whom the testimony is offered; (ii) the ability of the party to cure the prejudice; (iii) the extent to which introducing such testimony would disrupt the trial; and (iv) the moving party's bad faith or willfulness." <u>Peshlakai v. Ruiz</u>, 2013 WL 6503629, at *20.

evidence and in determining the factual issues it must decide." United States v. Gutierrez-Castro, 805 F. Supp. 2d 1218, 1224 (D.N.M. 2011)(Browning, J.). "The Court now must not only decide whether the expert is qualified to testify, but, under Daubert, whether the opinion testimony is the product of a reliable methodology." United States v. Gutierrez-Castro, 805 F. Supp. 2d at 1224. "Daubert . . . requires a court to scrutinize the proffered expert's reasoning to determine if that reasoning is sound." United States v. Gutierrez-Castro, 805 F. Supp. 2d at 1224.

1.    **Rule 702.**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 thus requires the trial court to "determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." United States v. Muldrow, 19 F.3d 1332, 1337 (10th Cir. 1994). Rule 702 uses a liberal definition of "expert." Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules ("[W]ithin the scope of this rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values."). An expert is "required to possess such skill, experience or knowledge in that particular

field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." LifeWise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004).

In United States v. Goxcon-Chagal, 886 F. Supp. 2d 1222, 1239 (D.N.M. 2012)(Browning, J.), the Court identified as relevant, and admitted, testimony on:

> (ii) the likelihood that a drug organization would entrust individuals outside of the organization with a large amount of drugs; (iii) the significance of the presence of multiple cellular telephones in the vehicle; (iv) the significance of the possession of multiple license plates; (v) the separation of individuals who package drugs and individuals who are drug couriers within a drug organization; (vi) the significance of the presence of multiple air fresheners in the vehicle; and (vii) the significance of the presence of a firearm in the vehicle.

886 Supp. 2d at 1239. The Court did not admit testimony on whether a highway portion was a "drug route," because the "proposed testimony is too close to characterizing 'nearly any trip down the interstate' as traveling in a known drug route" United States v. Goxcon-Chagal, 886 F. Supp. 2d at 1247. See United States v. Harry, 20 F. Supp. 3d 1196, 1243 (D.N.M. 2014)(Browning, J.)(deeming inadmissible testimony on a sex crime's victim's demeanor during an examination, because "demeanor is not always a reliable indicator whether someone is telling the truth, especially about sex -- then no expert testimony is needed. That knowledge is well within the knowledge of jurors and most people."); United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6634310, at *25 (D.N.M. Nov. 19, 2014)(Browning, J.)(stating that "testimony regarding nationally accepted police standards is irrelevant" to issues of "excessive force and" reasonableness). The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the pertinent admissibility requirements are met.[4] See Morales

---

[4]The Court is clipping the wings of experts all the time. See, e.g., Abraham v. WPX Prod.

v. E.D. Etnyre & Co., 382 F. Supp. 2d 1252, 1266 (D.N.M. 2005)(Browning, J.)(citing Bourjaily

v. United States, 483 U.S. 171, 175 (1987)).   Once the trial court has determined that expert

testimony would be helpful to the trier of fact, a witness "may qualify as an expert by knowledge,

skill, experience, training, or education and . . . the expert . . . should not be required to satisfy an

overly narrow test of his own qualifications."   Gardner v. Gen. Motors Corp., 507 F.2d 525, 528

(10th Cir. 1974)(internal quotation marks omitted).   See United States v. Rodella, 2014 WL

6634310, at *20 ("Because of [the proposed expert's] lack of practical experience, lack of

nationwide experience, and lack of an advanced degree in criminology or law enforcement, [the

proposed expert] is not qualified to testify about nationally accepted police procedures and

practices."); United States v. Goxcon-Chagal, 886 F. Supp. 2d at 1245 (determining an expert

qualified to testify to drug trafficking when he had personal knowledge of the subject from working

in the Drug Enforcement Agency for almost fifteen years).

---

Prods., LLC, 184 F. Supp. 3d at 1204 (precluding an expert from discussing class certification requirements, but allowing the expert to testify to information about royalty instruments); United States v. Rodriguez, 125 F. Supp. 3d at 1255-56 (permitting an expert to describe a cartel's structure and organization, and to explain drug running, but not admitting the expert's testimony opining that the defendant was running drugs); Montoya v. Sheldon, 286 F.R.D. at 619 (precluding a treating physician from testifying about a party's PTSD diagnosis, opinions about the causes for a party's symptoms, or a party's prognosis.   Attorneys ask experts to do too much, and experts try to do too much.   The experts are being paid; they are trying to be helpful to the attorney.   Cf. Mark I. Bernstein, Jury Evaluation of Expert Testimony under the Federal Rules, Drexel L.R. 239, 268 (2015)("Any use of expert witnesses paid by a party raises concerns of partisanship, competency, and honesty.   Because experts are partisan witnesses paid by a party, there is an inevitable danger of bias.).   The experts will often do anything.   They toss statements into their reports to be helpful.   Too many attorneys release the report as written -- without editing and without trimming.   This failure to edit and to trim creates unnecessary litigation.   Many expert reports contain statements that the proponent attorney does not need or even want.   The reports draw Daubert motions or rule 702 challenges.   The proponent is then forced to defend the statements.

Courts should, under the Federal Rules of Evidence, liberally admit expert testimony, see United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995)(describing rule 702 as a "liberal standard"), and the trial court has broad discretion in deciding whether to admit or exclude expert testimony, see Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647 (10th Cir. 1991)(noting the trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion"). "The Tenth Circuit appears to draw a line between expert testimony regarding credibility and expert testimony regarding voluntariness." United States v. Ganadonegro, 805 F. Supp. 2d 1188, 1214 (D.N.M. 2011)(Browning, J.)(citing United States v. Benally, 541 F.3d 990, 996 (10th Cir. 2008)). "The Tenth Circuit may draw this distinction because, generally, it is the jury's exclusive function to make credibility determinations . . . whereas a court makes a pretrial determination of the constitutional voluntariness of a statement." United States v. Ganadonegro, 805 F. Supp. 2d at 1214 (citation omitted)(citing United States v. Adams, 271 F.3d 1236, 1245 (10th Cir. 2001)).

## 2. The Standard in Daubert.

In its gatekeeper role, a court must assess the reasoning and methodology underlying an expert's opinion, and determine whether it is both scientifically valid and relevant to the facts of the case, i.e., whether it is helpful to the trier of fact. See Daubert, 509 U.S. at 594-95; Witherspoon v. Navajo Ref. Co., No. 03-1160, 2005 WL 5988649, at *2 (D.N.M. July 18, 2005)(Black, J.)(citing Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003)). The Supreme Court articulated a non-exclusive list of factors that weigh into a district court's first-step reliability determination, including: (i) whether the method has been tested; (ii) whether the method has been published and subject to peer review; (iii) the error rate; (iv) the existence of

standards and whether the witness applied them in the present case; and (v) whether the witness' method is generally accepted as reliable in the relevant medical and scientific community. See Daubert, 509 U.S. at 594-95.  The district court is also to consider whether the witness' conclusion represents an "unfounded extrapolation" from the data; whether the witness has adequately accounted for alternative explanations for the effect at issue; whether the opinion was reached for the purposes of litigation or as the result of independent studies; or whether it unduly relies on anecdotal evidence.  See Witherspoon v. Navajo Ref. Co., 2005 WL 5988649, at *3 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).  The Tenth Circuit stated the applicable standard in Norris v. Baxter Healthcare Corp., 397 F.3d 878 (10th Cir. 2005):

> Rule 702 requires the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable."  Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1120 (10th Cir. 2004)(quoting Daubert, 509 U.S. at 589 . . .).  This obligation involves a two-part inquiry.  Id.  "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'"  Id.  (quoting Daubert, 509 U.S. at 592 . . .).  In making this determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid. . . ."  Id.  (quoting Daubert, 509 U.S. at 592-93 . . .).  Second, the district court must further inquire into whether proposed testimony is sufficiently "relevant to the task at hand."  Daubert, 509 U.S. at 597 . . . .

Norris v. Baxter Healthcare Corp., 397 F.3d at 883-84 (footnote omitted).  "The second inquiry is related to the first.  Under the relevance prong of the Daubert analysis, the court must ensure that the proposed expert testimony logically advances a material aspect of the case. . . .  The evidence must have a valid scientific connection to the disputed facts in the case."  Norris v. Baxter Healthcare Corp., 397 F.3d at 884 n.2 (citing Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995)(on remand from the Supreme Court); Daubert, 509 U.S. at 591).  If the expert's proffered testimony fails on the first prong, the court does not reach the second prong.

See Norris v. Baxter Healthcare Corp., 397 F.3d at 884.  In Kumho Tire Co. v. Carmichael, 526

U.S. 137 (1999), the Supreme Court expanded the rules under Daubert to non-scientific expert

testimony.  See Kumho Tire Co. v. Carmichael, 526 U.S. at 141 ("We conclude that Daubert's

general holding -- setting forth the trial judge's general 'gatekeeping' obligation -- applies not only

to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other

specialized' knowledge." (quoting Carmichael v. Samyang Tires, Inc., 923 F. Supp. 1514, 1521

(S.D. Ala. 1996)).  The Supreme Court recognized in Kumho Tire Co. v. Carmichael that the

factors from Daubert will not apply to all cases:

> Our emphasis on the word "may" thus reflects Daubert's description of the Rule
> 702 inquiry as a flexible one.  Daubert makes clear that the factors it mentions do
> not constitute a definitive checklist or test.  And Daubert adds that the gatekeeping
> inquiry must be tied to the facts of a particular case.

Kumho Tire Co. v. Carmichael, 526 U.S. at 150 (internal quotation marks omitted).

In conducting its review under Daubert, a court must focus generally on "principles and

methodologies, and not on the conclusions generated." Armeanu v. Bridgestone/Firestone N. Am.,

Tire, LLC, No. CIV 05-0619, 2006 WL 4060665, at *11 (D.N.M. Sept. 26,

2006)(Browning, J.)(citing Daubert, 509 U.S. at 595).  "Despite this focus on methodology, an

expert's conclusions are not immune from scrutiny . . . and the court may conclude that there is

simply too great an analytical gap between the data and the opinion proffered."  Armeanu v.

Bridgestone/Firestone N. Am., Tire, LLC, 2006 WL 4060665, at *11 (alterations and internal

quotation marks omitted)(quoting Dodge v. Cotter Corp., 328 F.3d at 1222).  The proponent of the

expert's opinion testimony bears the burden of establishing that the expert is qualified, that the

methodology he or she uses to support his or her opinions is reliable, and that his or her opinion

fits the facts of the case and thus will be helpful to the jury.  See Norris v. Baxter Healthcare Corp.,

397 F.3d at 881.  The Tenth Circuit noted in <u>Hollander v. Sandoz Pharm. Corp.</u>, 289 F.3d 1193

(10th Cir. 2002):

> Because the district court has discretion to consider a variety of factors in assessing reliability under <u>Daubert</u>, and because, in light of that discretion, there is not an extensive body of appellate case law defining the criteria for assessing scientific reliability, we are limited to determining whether the district court's application of the <u>Daubert</u> manifests a clear error of judgment or exceeds the bounds of permissible choice in the circumstances. . . . Thus, when coupled with this deferential standard of review, <u>Daubert</u>'s effort to safeguard the reliability of science in the courtroom may produce a counter-intuitive effect: different courts relying on the essentially the same science may reach different results.

289 F.3d at 1206.  The United States Court of Appeals for the Ninth Circuit noted in <u>Claar v.</u>

<u>Burlington N.R.R.</u>, 29 F.3d 499 (9th Cir. 1994):

> Coming to a firm conclusion first and then doing research to support it is the antithesis of this method.  Certainly, scientists may form initial tentative hypotheses.  However, scientists whose conviction about the ultimate conclusion of their research is so firm that they are willing to aver under oath that it is correct prior to performing the necessary validating tests could properly be viewed by the district court as lacking the objectivity that is the hallmark of the scientific method.

29 F.3d at 502-03.

> Once reliability is established, however, it is still within the district court's discretion to determine whether expert testimony will be helpful to the trier of fact. In making that determination, the court should consider, among other factors, the testimony's relevance, the jurors' common knowledge and experience, and whether the expert's testimony may usurp the jury's primary role as the evaluator of evidence.

<u>Ram v. N.M. Dep't of Env't</u>, No. CIV 05-1083, 2006 WL 4079623, at *10 (D.N.M. Dec. 15,

2006)(Browning, J.)(citing <u>United States v. Rodriguez-Felix</u>, 450 F.3d 1117, 1123 (10th Cir.

2006)).

An untested hypothesis does not provide a scientific basis to support an expert opinion.

<u>See</u> <u>Norris v. Baxter Healthcare Corp.</u>, 397 F.3d at 887 ("[A]t best, silicone-associated connective

- 20 -

tissue disease is an untested hypothesis.  At worst, the link has been tested and found to be untenable.  Therefore, there is no scientific basis for any expert testimony as to its specific presence in Plaintiff."); In re Breast Implant Litig., 11 F. Supp. 2d 1217, 1228 (D. Colo. 1998)(Sparr, J.)("An untested hypothesis cannot be a scientifically reliable basis for an opinion on causation.").  A court is not required "to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  The court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. at 146. See Hollander v. Sandoz Pharm. Corp., 289 F.3d at 1209 (noting a lack of similarity between animal studies and human studies); Tyler v. Sterling Drug, Inc., 19 F. Supp. 2d 1239, 1244 (N.D. Okla. 1998)(Cook, J.)("Test results on animals are not necessarily reliable evidence of the same reaction in humans.").  Courts have excluded experts' opinions when the experts depart from their own established standards.  See Truck Ins. Exch. v. MagneTek, Inc., 360 F.3d 1206, 1213 (10th Cir. 2004)("The district court noted that [the expert]'s opinion did not meet the standards of fire investigation [the expert] himself professed he adhered to."); Magdaleno v. Burlington N.R.R., 5 F. Supp. 2d 899, 905 (D. Colo. 1998)(Babcock, J.)("In sum, [the expert]'s methodology is not consistent with the methodologies described by the authors and experts whom [the expert] identifies as key authorities in his field.").

### 3. Necessity of Evaluating an Issue Under Daubert.

The restrictions in Daubert apply to both "novel" expert testimony and "well-established propositions."  509 U.S. at 593 n.11 ("Although the Frye[5] decision itself focused exclusively on

---

[5]Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), superseded by rule 702 of the Federal Rules of Evidence, held that, for an expert opinion to be admissible, "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the

'novel' scientific techniques, we do not read the requirements of Rule 702 to apply specially or exclusively to unconventional evidence."). "Of course, well-established propositions are less likely to be challenged than those that are novel, and they are more handily defended." Daubert, 509 U.S. at 593 n.11. "Indeed, theories that are so firmly established as to have attained the status of scientific law, such as the laws of thermodynamics, properly are subject to judicial notice under Federal Rule of Evidence 201." Daubert, 509 U.S. at 593 n.11.

"[W]hen experts employ established methods in their usual manner, a district court need not take issue under Daubert. . . ." Att'y Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d 769, 780 (10th Cir. 2009). "[H]owever, where established methods are employed in new ways, a district court may require further indications of reliability." Att'y Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d at 780. Whether courts have accepted theories underlying an expert's opinion is a relevant consideration in determining whether expert testimony is reliable. See Att'y Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d at 780 ("The case law indicates that the courts are not unfamiliar with the PCR methodology, and in fact some courts have indicated their acceptance of it.").

## LAW REGARDING INDEPENDENT MEDICAL EXAMINATIONS

"The deposition-discovery rules are to be accorded a broad and liberal treatment." Schlagenhauf v. Holder, 379 U.S. 104, 114-15 (1964)(quoting Hickman v. Taylor, 329 U.S. 495, 507, (1947)). The Federal Rules of Civil Procedure permit the physical and mental examinations of parties upon "good cause shown," and when that party places their mental or physical condition "in controversy." Fed. R. Civ. P. 35.

---

particular field in which it belongs." 293 F. at 1014.

"While Rule 35 should be construed liberally in favor of granting discovery, its application is left to the sound discretion of the court." Simpson v. Univ. of Colo., 220 F.R.D. 354, 362 (D. Colo. 2004). See Stinchcomb v. United States, 132 F.R.D. 29, 30 (E.D. Pa. 1990)(Waldman, J.). Just because the plaintiff's medical condition is relevant, however, does not mean that the court should order an independent medical examination. The words "good cause" in rule 35 indicate that there must be a greater showing of need than relevance. Schlagenhauf v. Holder, 379 U.S. 104, 117-18 (1964)(citing Guilford Nat. Bank of Greensboro v. S. Ry., 297 F.2d 921, 924 (4th Cir. 1962)).

The movant's ability to obtain the information by other means is relevant in deciding whether to grant such a motion. See Schlagenhauf v. Holder, 379 U.S. at 118. One court has held that, if discovery of medical reports has been obtained, good cause for an order to submit to a physical examination may no longer exist. See Hughes v. Groves, 47 F.R.D. 52, 57 (W.D. Mo. 1969)(Becker, J.). A state court denied a rule 35 motion in a case in which the party whose examination was sought had been treated in a railroad hospital, and the railroad had access to the hospital records and the reports of the hospital's physicians. See Martin v. Tindell, 98 So.2d 473, 476 (Fla. 1957), cert. denied, 355 U.S. 959 (1958).

In Scott v. Spanier Bros., Inc., 298 F.2d 928 (2d Cir. 1962), the United States Court of Appeals for the Second Circuit held that it was not error for the trial judge to pick the examiner:

> We believe that the appointment of an impartial medical expert by the court in the exercise of its sound discretion is an equitable and forward-looking technique for promoting the fair trial of lawsuit. It is now well accepted that the trial judge is not a mere umpire at the trial; indeed, there may be circumstances in which he would have a duty to seek impartial assistance in order to enlighten the jury and himself on issues which have become confused because of partisanship in presentation.

Scott v. Spanier Bros., Inc., 298 F.2d at 930–31.

## LAW REGARDING RULE 37 SANCTIONS

Rule 37(b) states that, if a party fails to obey "an order to provide or permit discovery, including an order under Rule 26(f), 35 or 37(a), the court where the action is pending may issue further just orders," including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992). Although the court has discretion to choose an appropriate sanction, the sanction must be just. See The Procter & Gamble Co. v. Haugen, 427 F.3d 727, 738 (10th Cir. 2005)(citation omitted).

## LAW REGARDING EXPERT DISCLOSURES

Rule 26 of the Federal Rules of Civil Procedure provides, in relevant part:

> (2) Disclosure of Expert Testimony.
> > (A) In General.  In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
> > (B) Witnesses Who Must Provide a Written Report.  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) Witnesses Who Do Not Provide a Written Report.  Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) Time to Disclose Expert Testimony.  A party must make these disclosures at the times and in the sequence that the court orders.  Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) Supplementing the Disclosure.  The parties must supplement these disclosures when required under Rule 26(e).

Fed. R. Civ. P. 26(a)(2).  Pursuant to rule 26(b)(4)(A), "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial.  If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided."  Fed. R. Civ. P. 26(b)(4)(A).

"District courts have broad discretion to exclude untimely disclosed expert-witness testimony."  Pride v. BIC Corp., 218 F.3d 566 (6th Cir. 2000)(citing Trilogy Commc'ns v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 745 (Fed. Cir. 1997); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997)).  See Hirpa v. IHC Hosps., Inc., 50 Fed. Appx. 928, 932 (10th

Cir. 2002)(unpublished)[6]("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court.")(quoting Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir.1999)("Woodworker")). Nonetheless, a district court may "refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless." Jacobsen v. Deseret Book Co., 287 F.3d 936, 952 (10th Cir. 2002).

The United States Court of Appeals for the Tenth Circuit has identified four factors that a district court should consider when deciding whether to exclude expert evidence: "(i) the prejudice or surprise to the party against whom the testimony is offered; (ii) the ability of the party to cure the prejudice; (iii) the extent to which introducing such testimony would disrupt the trial; and (iv) the moving party's bad faith or willfulness." HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d 1191, 1200 (10th Cir. 2017)(quoting Woodworker, 170 F.3d at 993).  In exercising its discretion, "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." Woodworker, 170 F.3d at 993.

---

[6]The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir.2005)(citations omitted).

While district courts "need not make *explicit* findings concerning the existence of a substantial justification or the harmlessness of a Rule 26(a)" or rule 26(e) deficiency, the factors delineated in Woodworker "*should* guide the district court[.]" HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d at 1201 (emphasis in original)(collecting Tenth Circuit cases). See Woodworker, 170 F.3d at 993. The district court's analysis should "clearly and meaningfully embody" the Woodworker inquiry. HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d at 1202. "Failure to consider this criteria amounts to legal error[.]" HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d at 1202. A district court must set forth clearly its reasoning for exercising discretion to exclude evidence under Rule 37(c)(1) of the Federal Rules of Civil Procedure. See HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d at 1203 (collecting cases).[7]

Considering whether a district court properly excluded evidence because a party failed to comply with rule 26(a) or (e), the Tenth Circuit has explained: "The parties to a litigation are not merely players in a game, trying to catch each other out. Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits." Gillum v.

---

[7]Rule 37(c)(1) provides in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions[.]

Fed. R. Civ. P. 37(c)(1)(emphasis added).

United States, 309 Fed. Appx. 267, 270 (10th Cir. 2009)(unpublished)("Gillum").  "[T]he Gillum court embraced the notion embodied in [the Tenth Circuit's] Rule 37(b)(2) decisions that district courts should consider the efficacy of lesser sanctions . . . ."  HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d at 1205 (citing Gillum, 309 Fed. Appx. at 267).

In Gillum, the Tenth Circuit determined that a party's failure to produce a written expert report in compliance with rule 26(a)(2)(B) did not warrant the "extreme sanction" of excluding the expert's testimony.  See 309 Fed. Appx. at 269-70.  The Honorable Stephen Friot, United States District Judge for the Western District of Oklahoma, had found that the lack of an expert report prejudiced the United States, because it could not adequately prepare to depose the expert.  See 309 Fed. Appx. at 269-70.  Judge Friot determined that the prejudice was incurable, because the United States had "only . . . one chance to confront that expert . . . flat-footed, with the benefit of the homework that you can do before you take that expert deposition, and that opportunity is now gone permanently in this case."  309 Fed. Appx. at 269-70 (internal quotations omitted).  The Tenth Circuit held that the district court "abused its discretion in analyzing the 'cure factor,'" because the district court "focused on the fact that the inadequate report permanently deprived the United States of the opportunity to confront [the expert] . . . 'flat-footed.'" 309 Fed. Appx. at 270. The Tenth Circuit held that this analysis was faulty, because the plaintiff had arranged for the United States to depose the expert a second time before the end of the discovery period, and the plaintiff could cover the United States' costs for a second deposition.  See 309 Fed. Appx. at 270. While stating that "[b]y no means do we condone the provision of inadequate expert report and begrudging snippets of information, and we caution that parties who behave in this manner act to

their peril," the Tenth Circuit held that the total exclusion of the expert's testimony was unnecessary.  309 Fed. Appx. at 270.

In HCG Platinum, LLC v. Preferred Prod. Placement Corp., the Tenth Circuit explained that, "[a]lthough Gillum constitutes non-binding precedent," its "implicit incorporation of a lesser-sanctions approach to the Rule 37(c)(1) inquiry is persuasive[.]" HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d at 1205.  The Tenth Circuit noted that "a lesser-sanctions inquiry finds support within the overall structure of rule 37(c)(1), which expressly empowers district courts to impose sanctions *short of* exclusion." HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d at 1205 (emphasis in the original).  See Fed. R. Civ. P. 37(c)(1)(A)-(C)(listing the other sanctions the court may impose in "addition to or instead of" exclusion).

Conversely, in Martinez v. Target Corp., the Tenth Circuit found that a district court properly struck a plaintiff's untimely expert report.  Martinez v. Target Corp., 384 Fed. Appx. 840, 847-48 (10th Cir. 2010)(unpublished).  The plaintiff filed the report nine months after the deadline for expert disclosure had passed, seven weeks after discovery closed, and after the defendant had filed for summary judgment.  See Martinez v. Target Corp., 384 Fed. Appx. at 847-48.  The plaintiff argued that the defendant should have been on notice of the expert reports, because they were filed in a separate action in Oklahoma before the plaintiff's trial, but the district court found "no precedent for the proposition that the timely disclosure of expert reports in a different case could satisfy the deadline requirements established in the present case." Martinez v. Target Corp., 384 Fed. Appx. at 847-48.  The plaintiff also provided no explanation for her failure to seek an "extension of the expert-disclosure deadline if, as she argued, she had an extremely difficult time

locating experts she considered critical to her case." Martinez v. Target Corp., 384 Fed. Appx. at 848.

The Court has previously applied Woodworker to overrule a defendant's objection to a plaintiff's supplement to an expert report. See Coffey v. United States, No. CIV 08-0588 JB/LFG, 2012 WL 2175747, at *1, *12-14 (D.N.M. May 26, 2012)(Browning, J.). In Coffey v. United States, the Court determined that any prejudice or surprise which the defendant suffered was minimal, because the defendant's main argument against admitting the supplemented report was that it lacked relevance. See Coffey v. United States, 2012 WL 2175747, at *13. The Court explained that the defendant could raise its objection at trial and, thus, did not preclude the report pretrial. See 2012 WL 2175747, at *13. Additionally, the Court determined that, because the defendant had the supplemented report well before it deposed the plaintiff's expert, any prejudice to the defendant was the defendant's own fault. See 2012 WL 2175747, at *13. There was no evidence that the supplemented report would disrupt trial, because the defendant did not assert that it "would need additional witnesses to combat improper testimony." 2012 WL 2175747, at *12-13. Last, although the plaintiff did not have a consistent explanation for the need to supplement the report rather than including the new information in the expert's first report, the Court did not find any evidence of bad faith or willfulness in the plaintiff's delay. See 2012 WL 21275747, at *14. Accordingly, the Court did not exclude the supplemented expert report. See 2012 WL 21275747, at *14-15.

In contrast, in Guidance Endodontics, LLC v. Dentsply International, Incorporated, the Court did not permit a party to supplement its expert report given the timing of the supplementation and the harm to the opposing side. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No.

Civ. 08-1101 JB/RLP, 2009 WL 3672502, at *4 (D.N.M. Sept. 29, 2009)(Browning, J.).   The

Court found it particularly relevant that the party seeking to supplement -- the plaintiff -- "had all

of the information necessary to develop this supplemental report since June 17, 2009—two weeks

before the deadline for designating rebuttal experts, a month and a half before the deadline for

supplementing expert reports, and three months before trial," but did not give the supplement "to

the Defendants until the day the trial began."  2009 WL 3672502, at *4.  The Court had entered a

preliminary injunction against the defendants, and was wary of delaying the trial, because even

one day could substantially prejudice the defendants.  <u>See</u> 2009 WL 3672502, at *5.  The Court,

addressing the supplemental expert report's contents and the timing issues, stated:

> While the Defendants are not entirely in the dark regarding Desrosiers'
> testimony, the timing of the supplemental report is such that it will impede the
> Defendants' ability to rebut any testimony based on it.  The trial of a case is a
> substantial undertaking that consumes most or all of an attorney's time.  Delivering
> an expert report to opposing counsel on the first day of trial, therefore, is not helpful.
> There is no time to prepare a rebuttal expert or investigate the principles underlying
> the expert's opinions.
>
> In this case, the Defendants have little if any time to prepare a new or
> existing expert witness by sending the witness to the Johnson City facility nor doing
> additional research to rebut Desrosiers' new expected testimony.  Furthermore, the
> supplemental report ambiguously references "some recent research" that underlies
> these new opinions.  With no indication what that research was and no properly
> informed expert witness to prepare the Defendants' counsel, the Defendants would
> be left going fishing in the expert's superior knowledge on cross-examination,
> which is never an enviable position for one to be in.

2009 WL 3672502, at *5 (citation omitted).  The Court also concluded that, given that the case

was currently in trial, "neither party can substantially decrease the level of prejudice."  2009 WL

3672502, at *5.  The Court also noted that the particularly late timing of the disclosure was

disruptive, because if the Court were to pause the trial to allow the Defendants to prepare for this

testimony, someone would have to rework the travel arrangements of many of the witnesses.  <u>See</u>

2009 WL 3672502, at *5.  As a result, the trial would not be completed within the three weeks that the Court had allotted for it.  See 2009 WL 3672502, at *5.  Compare Solis–Marrufo v. Bd. of Comm'rs for Cty. of Bernalillo, No. CIV 11-0107 JB/KBM, 2013 WL 1658304, at *40 (D.N.M. April 4, 2013)(Browning, J.)(declining to exclude witnesses' testimony at trial, "because the Court's sanctions render the late disclosure harmless").

## LAW REGARDING TREATING PHYSICIAN TESTIMONY

Rule 26(b) requires parties to disclose any expert witnesses in a timely manner, in addition to fact witnesses identified in rule 26(a)(1).  See Fed. R. Civ. P. 26(a)-(b).  In most cases, the parties must also disclose a written expert report.  See Fed. R. Civ. P. 26(a)(2)(B). The advisory committee notes to the 1993 amendment to rule 26(a)(2) state that the rule allows a treating physician who is disclosed as an expert to give expert testimony without submitting a written report:

> [T]his rule . . . continue[s] to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters.  The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case . . . . A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.

Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment.  Such experts are a party's "non-retained experts."

When a witness or a treating physician is not disclosed as an expert, the witness can "still testify as [a] fact witness[ ], but [cannot] testify as [an] expert[ ]." Musser v. Gentiva Health Servs., 356 F.3d 751, 757 (7th Cir. 2004)(holding that, while the treating physicians were not required to give an expert report, they could not testify as experts where the plaintiff failed to disclose the physicians under rule 26(a)(2), only doing so under rule 26(a)(1)).  See Davoll v. Webb, 194 F.3d

1116, 1138 (10th Cir. 1999)(holding that treating physician's testimony was proper lay testimony, because the physician "explained various medical terminology and drew a diagram . . . [which] clarified his testimony on his treatment of [the plaintiff] and did not constitute opinion testimony."); Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996)(holding that treating physician, not disclosed under rule 26(a)(2), was allowed to give proper lay witness testimony under rule 701).

In Sturgeon v. ABF Freight Systems, Inc., No. CIV 02-1317 JB/WDS, 2004 WL 5872664, at *3 (D.N.M. Jan. 14, 2004)(Browning, J.), the Court granted a motion to strike portions of a plaintiff's affidavit that were beyond the scope of a treating physician, because the plaintiff failed to disclose the physician as an expert witness under rule 26(a)(2) before the expert disclosure deadline. See Sturgeon v. ABF Freight Sys., Inc., 2004 WL 5872664, at *3. The physician treated the plaintiff from 1994 to 1996, and the Court restricted the physician to "his personal care and treatment of [the plaintiff]" during that time. 2004 WL 5872664, at *3. The Court did not allow the physician to testify regarding the plaintiff's current medical status or opine on his status by reliance on other physicians' records, and also did not allow the physician to "offer expert medical and/or legal opinions as to the [plaintiff's] alleged current disability." 2004 WL 5872664, at *3. Rule 26(a)(2)'s 2010 amendments "require disclosure regarding expected expert testimony of those expert witnesses not required to provide expert reports[.]" Fed. R. Civ. P. 26 advisory committee's note. Non-retained expert disclosures are "considerably less extensive than the report required by Rule 26(a)(2)(B)." Fed. R. Civ. P. 26 advisory committee's note. See also Ramirez v. Ultimate Concrete, LLC, No. 13CV649 JCH/LAM, 2015 WL 12832341, at *2 (D.N.M. Feb. 10, 2015)(Herrera, J.)("[T]he requisite treating physician summary is considerably less extensive

and less detailed than a retained expert's report[.]")(internal quotations omitted).  The Advisory Committee notes instruct courts to "take care against requiring undue detail" in non-retained expert disclosures.  Fed. R. Civ. P. 26 advisory committee's note.  Non-retained experts may provide both fact witness testimony and expert testimony under rules 702, 703, or 705.  <u>See</u> Fed. R. Civ. P. 26 advisory committee's note. Common examples include "physicians or other health care professionals . . . who do not regularly provide expert testimony."  Fed. R. Civ. P. 26 advisory committee's note.

## <u>ANALYSIS</u>

For the reasons stated below, the Court grants in part and denies in part the U.S. MIL.  At trial, Rawers must demonstrate that her medical "treatment was reasonable and necessary and stemmed from the accident."  <u>Neiberger v. Fed Ex Ground Package Sys., Inc.</u>, 566 F.3d 1184, 1193 (10th Cir. 2009).  <u>See also</u> <u>Williams v. United States</u>, No. CIV 217-00344 JCH/SMV, 2019 WL 5395349, at *6 (D.N.M. Oct. 22, 2019)(Herrera, J.)("A plaintiff must show that the medical treatment costs were reasonable and necessary to treat injuries caused by the defendant's acts."). The United States seeks to curtail the testimony of Rawers' experts with respect to this element of her claim.  <u>See</u> U.S. MIL at 1.  The Court agrees with the United States that Rawers' non-retained experts may only testify about treatment that they personally provided.  U.S. MIL at 3.  The Court also concludes Rawers' expert disclosure satisfied rule 26(A)(2)(a).  <u>See</u> Expert Disclosure at 3. Accordingly, the Court concludes that Rawers' expert disclosure and her expert reports provide the United States with adequate notice and information regarding the testimony she intends to elicit at trial.  <u>See</u> Expert Disclosure; Rawers MSJ at 2-3.  Furthermore, the Court permits the IME Panel

to testify whether Rawers' care was "reasonable and necessary." U.S. MIL at 4. It therefore grants in part and denies in part the U.S. MIL.

## I.   RAWERS' NON-RETAINED EXPERTS MAY TESTIFY REGARDING THE REASONABLENESS AND NECESSITY OF THE MEDICAL CARE THAT EACH EXPERT PERSONALLY PROVIDED.

The parties have agreed that with respect to "treating providers there is no dispute they can't offer new expert opinions on the case." Tr. at 18:1-4 (O'Connell). See id. at 17:2-4 (O'Connell). Rawers' non-retained experts, Dr. Vasquez and Dr. Ravessoud, are therefore permitted to testify whether the medical care they personally provided to Rawers was reasonable and necessary. See U.S. MIL at 2.

"Non-retained experts need only provide a disclosure that complies with rule 26(a)(2)(C)." Peshlakai v. Ruiz, No. CIV 13-0752 JB/ACT, 2013 WL 6503629, at *7 (D.N.M. Dec. 7, 2013)(Browning, J.). Further, "[t]reating physicians are not required to issue expert reports because they are not retained experts[.]" Boutwell v. Southwest Commercial Management, Inc., 2009 WL 2950839, at *7 (D.N.M. 2009)("Boutwell") (Browning, J.)(citing Watson v. United States, 485 F.3d 1100, 1107 (10th Cir. 2008)). Rawers thus need not provide a "written report" for either of her non-retained experts. See Fed. R. Civ. P. 26(a)(2)(C). Rule 26(a)(2)(C) only requires a disclosure which states: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Rawers' expert disclosure indicates that both Dr. Vasquez and Dr. Ravessoud will testify regarding "the medical care he provided to Plaintiff."[8] Expert Disclosure at 2. The expert

---

[8]The United States appears to agree with Rawers on this point: "Doctors Ravessoud and

disclosure disclosure also states that both doctors will testify "why such medical care was clinically necessary." Expert Disclosure at 2. The Court thereby concludes that Rawers has provided sufficient disclosures for both of her non-retained experts. See Expert Disclosure at 2. Accordingly, the Court will allow both of Rawers' non-retained experts to testify regarding the reasonableness and necessity of care that each expert personally provided. See Boutwell, 2009 WL 2950839, at *7 ("[T]reating physicians must limit their testimony to opinions and conclusions drawn earlier from prior examination and treatment of their patients.")(citing Sturgeon v. ABF Freight Sys., Inc., 2004 WL 5872664, at *3-4).

## II.   RAWERS' RETAINED EXPERTS MAY TESTIFY ABOUT ANY OPINIONS CONTAINED IN THEIR EXPERT REPORTS REGARDING THE REASONABLENESS AND NECESSITY OF RAWERS' MEDICAL CARE FOLLOWING THE ACCIDENT.

A retained expert must provide a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Rawers designates Dr. Saiz, Dr. Rauck, and Joan Schofield as retained expert witnesses. Dr. Saiz, Dr. Rauck, and Schofield may thus testify about opinions contained in their expert reports.

Dr. Saiz opined on the reasonableness and necessity of Rawers' medical care. See Plaintiff's Expert Report at 13 (Dr. Paul Saiz), filed May 18, 2020 (Doc. 57-3)("Dr. Saiz Report"). Rawers' expert disclosures indicates that Dr. Saiz will testify regarding "how the accident . . . caused the medical care that Plaintiff subsequently was required to undergo in order to treat her injuries" as well as "future medical care Plaintiff will require." Expert Disclosure at 6.

---

Vasquez are not permitted to provide testimony beyond the treatments they personally provided Plaintiff." U.S. MIL at 3-4.

Dr. Saiz examined Rawers on December 4, 2019, and issued his expert report on December 19, 2019.  See Rawers MSJ ¶ 7, at 2.  Dr. Saiz finds that "to a reasonable degree of medical probability," the accident "did cause malfunction of the spinal cord stimulator requiring revision of the simulator and generator."  Plaintiff's Expert Report, at 13 (Dr. Paul Saiz), filed May 18, 2020 (Doc. 57-3)("Dr. Saiz Report").  Dr. Saiz also concludes that Rawers "neck pain clearly started after this accident," which led Dr. Ravessoud "to perform an anterior cervical discectomy and fusion[.]" Dr. Saiz Report at 13.  Finally, Dr. Saiz finds that "all costs associated with revision of her non-union…in the future, are related to" the accident.  Dr. Saiz Report at 13.  Without using the terms "reasonable" or "necessary," Dr. Saiz' report opined whether Rawers medical care following the accident was reasonable and necessary.  See Dr. Saiz Report at 13-14.   He also provided an opinion about what future medical care Rawers will likely need.  See Dr. Saiz Report at 13-14.  Accordingly, Dr. Saiz may testify (i) whether Rawers' post-accident medical care was reasonable and necessary; and (ii) whether future medical procedures will be reasonable and necessary.

Like Dr. Saiz, Dr. Rauck may testify regarding matters contained in his expert report. Dr. Rauck reviewed Rawers' medical records and conducted a telephone interview with Rawers on December 30, 2019.  See Plaintiff's Expert Report (Dr. Richard Rauck), filed May 18, 2020, at 1 (Doc. 57-4)("Dr. Rauck Report").  He issued an expert report on January 13, 2020.  See Dr. Rauck Report at 1.  Dr. Rauck finds that Rawers' accident "resulted in her spinal cord stimulator being damaged and required" two replacements.  Dr. Rauck Report at 8.  He concludes that "neither of these replacements would have been necessary absent the" accident.  Dr. Rauck Report at 8.  Dr. Rauck also noted that he "believes [Rawers]she will need future medications and physical

therapy[.]" Dr. Rauck Report at 9.  Accordingly, the Court permits Dr. Rauck to testify regarding the (i) reasonableness and necessity of Rawers' medical treatment that relates to her spinal cord stimulator; and (ii) how and whether Rawers' spinal cord stimulator treatment relates to the accident.

Next, the Court concludes that Schofield may testify about Rawers' post-accident medical bills. Schofield examined Rawers' alleged medical billings and issued an expert report with her findings on January 14, 2020.  See Rawers MSJ ¶ 9, at 2.  Schofield's report provides "an analysis as to whether [Rawers'] medical bills' charges were reasonable in amount."  Plaintiff's Expert Report at 1 (Joan Schofield), filed May 18, 2020 (Doc. 57-5)("Schofield Report").  Schofield "defers to Dr. Saiz' opinion as to the claim relatedness of the analyzed bills."  Schofield Report at 1.  Schofield may testify, therefore, regarding whether the amounts of Rawers' medical bills are reasonable.  See Schofield Report.  She may not testify whether Rawers' medical bills related to the accident.  In sum, each retained expert may testify as to the substance of his or her expert report.

## III.   THE IME PANEL MAY TESTIFY ABOUT THE REASONABLENESS AND NECESSITY OF RAWERS' MEDICAL CARE AT TRIAL.

Rawers does not include the IME Panelists' names of in her expert disclosure, filed January 15, 2020.  See Expert Disclosure at 3.  She instead refers to "all expert witnesses retained by Defendant . . . including but not limited to all the physicians that attended Medical Examination of Plaintiff conducted by Defendants' experts."  Expert Disclosure at 3.  Rawers indicated an intention to elicit testimony regarding "how and why the accident cause[d] Plaintiff's treatment . . . [and] care," as well as "information regarding damages and medical expenses resulting from the injuries she sustained[.]" Expert Disclosure at 3.

On April 9, 2020, the United States provided Rawers with its expert disclosure, containing the names and address of the IME panelists.  See Certificate of Service: Expert Disclosure, filed April 9, 2020 (Doc. 50).  Rawers did not amend her expert disclosure to include the IME Panelists' names and addresses.  Her subsequent witness list named all three members of the IME Panel: Dr. Shelley, Dr. Malizzo, and Dr. Crawford. See Rawers Witness List at 3.

Rule 26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, 705."  Fed. R. Civ. P. 26(a)(2)(A).  By contrast, rule 26(a)(1)(A)(i) requires parties to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information[.]" Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 37(c)(1) provides that "[i]f a party fails to provide . . . a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The United States contends that Rawers' failure to include the IME Panelists' names in her expert disclosure is fatal to her attempt to call the IME Panelists as witnesses at trial.  U.S. MIL at 5.

The United States is correct that Rawers' initial disclosures do not "identi[fy]" the IME panelists by name.[9] Fed. R. Civ. P. 26(a)(2)(A); U.S. MIL at 5.  Nevertheless, rule 26(a)(2)(A)'s text does not require parties to identify their expert witnesses by name. Fed. R. Civ. P. 26(a)(2)(A). See Baki v. B.F. Diamond Const. Co., 71 F.R.D. 179, 182 (D. Md. 1976)(Miller, J.)(finding that

---

[9]The Court notes that the United States did not attempt to exclude the IME Panel from testifying entirely.  If the United States calls the IME Panel to testify at trial, and tries to prevent Rawers from calling the IME Panelists during her case in chief, Rawers would need to demonstrate exceptional circumstances to call the IME Panel on direct. Citation?

the word "identify" as used elsewhere in the rules "is not meant to duplicate the authority for requiring the production of the names and locations").  Furthermore, the Tenth Circuit has never inferred such a requirement from Rule 26(a)(2)(A).  See generally Crowner v. Sofarelli, No. 3:18-CV-02656-JMC, 2020 WL 1819667, at *3 (D.S.C. April 10, 2020)(Childs, J.)(concluding that, although a defendant "failed to timely identify [the expert witness] by full name" the witness "is not an undisclosed expert").  But see Jones v. Disc. Auto Parts, LLC, No. 616CV138ORL37KRS, 2017 WL 1396477, at *10 (M.D. Fla. April 19, 2017)(Dalton, J.)(finding that a plaintiff's disclosures did not satisfy rule 26(a)(2)(A), because "they did not identify the names of the expert witnesses she intended to use at trial," but "merely identified the treating physicians' medical practices"); CMFG Life Ins. Co. v. RBS Sec. Inc., No. 12-CV-037-WMC, 2013 WL 4483068, at *20 (W.D. Wis. Aug. 19, 2013)(Conley, J.)("In instructing the proponent of expert testimony to identify the expert witness, Rule 26(a)(2)(A) undoubtedly requires disclosure of a specific individual by name.").

This issue is analogous to an issue that the Court decided in Boutwell.  See 2009 WL 2950839.  There, as here, the defendants argued under rule 26(a)(2)(A) that the plaintiff did not properly disclose an expert.  See 2009 WL 2950839, at *6.  Further, as here, the plaintiff was attempting to rely on the defendant's expert report.  See 2009 WL 2950839, at *7.  In the joint status report, the Boutwell plaintiff identified as a witness "'any witness identified by the Defendants or during discovery.'" 2009 WL 2950839, at *6.  The Court concluded that this "general[] descr[iption]" satisfies the rules of procedure and evidence.  2009 WL 2950839, at *7.  Although Rawers' expert disclosure does not identify by name the IME Panelists, she does note an intent to call "all expert witnesses retained by Defendant . . . including but not limited to all the

physicians that attended Medical Examination of Plaintiff conducted by Defendants' experts." Expert Disclosure at 3.  This disclosure provides greater specificity than the "general[] descr[iption]" in Boutwell.  2009 WL 2950839, at *7.  Further, the IME Panelists conducted a medical examination of Rawers.  See generally IME Report at 1.  Additionally, has never been a secret who was on the panel, so the general description creates no confusion or mystery.  See generally IME Report at 1.  Finally, Rawers' subsequent witness list, filed over five weeks before trial, does provide the IME Panelists' names.  See Rawers Witness List at 3.  Accordingly, because the IME panelists fall within the scope of the description provided in the expert disclosure, and Rawers provided their names well prior to trial, and Rawers has provided sufficient notice to the United States of her intent to call the IME Panelists at trial.

The United States correctly notes that the IME Panel may not testify regarding matters outside their report.  See U.S. MIL at 4.  The IME Report states that the United States has asked the IME Panel to opine regarding the "reasonableness and necessity of treatment for the diagnoses and conditions" resulting from the accident, as well as "necessary future care[.]" IME Report at 1. IME Panelist Dr. Malizzo opined that the accident "cause[d] a dysfunction in Ms. Rawers' spinal cord stimulator . . . so this device was removed and a new spinal cord stimulator was implanted." IME Report at 19.  Dr. Malizzo's statement discusses the relationship between Rawers' accident and her subsequent surgery, which relates to whether spinal cord stimulator replacement surgery was "reasonable" or "necessary."  IME Report at 19.  See also Tr. at 3:10-12 (Cunniff)(defining "necessary" as "linked to the motor vehicle accident at issue").   IME Panelist Dr. Crawford states that the accident "cause[d] her underlying cervical stenosis and cervical degeneration to become symptomatic," although he opines that Rawers "may have benefited from more conservative

treatments[.]" IME Report at 21.   This opinion relates to whether Rawers' cervical fusion procedure was "reasonable" and "necessary."   IME Report at 21.   Last, the panel's joint conclusions explain that "care for the conditions listed above was reasonable and necessary," and related to the accident.  IME Report at 23.  As the foregoing excerpts evidence, the IME Report discusses the reasonableness and necessity of Rawers' post-accident medical care at length.  It also opines whether future medical care will be reasonable or necessary.   Accordingly, the IME panelists may testify about this subject at trial.

**IT IS ORDERED** that: (i) the Court will allow both of Plaintiff Karen Rawers' non-retained experts -- Dr. Fernando Ravessoud and Dr. Eduardo Vazquez -- to testify regarding the reasonableness and necessity of care that each expert personally provided; (ii) the Court permits each of Rawers' retained experts to testify regarding substance of his or her expert report: (A) Dr. Paul Saiz may testify whether Rawers' post-accident medical care was reasonable and necessary and whether future medical procedures will be reasonable and necessary; (B) Dr. Richard Rauck may testify regarding the reasonableness and necessity of Rawers' medical treatment that relates to her spinal cord stimulator; and how Rawers' spinal cord stimulator treatment relates to the accident; and (C) Joan Schofield, R.N., may testify whether the amounts of Rawers' medical bills are reasonable, but may not testify whether Rawers' medical bills relate to the accident; (iii) the Court allows the Defendant's Independent Medical Examination

Panelists -- Dr. Brian M. Shelley, Dr. Michael Malizzo, and Dr. Mark Crawford -- to testify at

trial about the reasonableness and necessity of Rawers' past and future medical care.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jess R. Lilley
Jerome O'Connell
Lilley & O'Connell, P.A.
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

John C. Anderson
  United States Attorney
Roberto D. Ortega
Sean M. Cunniff
Christoper F. Jeu
  Assistant United States Attorneys
United States Attorneys Office
Albuquerque, New Mexico

    *Attorneys for the United States*